# EXHIBIT A

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*
**ELECTRONICALLY FILED**
**Superior Court of California**
**County of Sonoma**
**4/15/2020 8:00 AM**
Arlene D. Junior, Clerk of the Court
**By: Alexandria Hankes, Deputy Clerk**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAVE STANLEY; BARRY W MEYER, EXECUTOR OF THE ESTATE OF MELVIN ROUSE;
DOES 1 through 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BAYVIEW LOAN SERVICING, LLC

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Sonoma<br>600 Administration Drive, Santa, Rosa, CA 95403 | CASE NUMBER: *(Número del Caso):*<br>**SCV-266245** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Seth Harris, Esq., McCarthy Holthus LLP, 411 Ivy Street, San Diego, CA 92101 619-685-4800

| DATE:<br>*(Fecha)* 4/15/2020 8:00 AM | **ARLENE D. JUNIOR** Clerk, by<br>*(Secretario)* | _Alexandria Hankes_ , Deputy<br>Alexandria Hankes *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☒ as the person sued under the fictitious name of *(specify):* Doe 2
3. ☒ on behalf of *(specify):* Internal Revenue Service

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☒ other *(specify):* 416.50 public entity

4. ☒ by personal delivery on *(date)* 2-26-21

**SUMMONS**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Page 1 of 1

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ] [ Save this form ]      [ Clear this form ]

**McCARTHY & HOLTHUS, LLP**
Melissa Robbins Coutts, Esq. (SBN: 246723)
Kelsey Luu, Esq. (SBN: 315593)
2763 Camino Del Rio S, Suite 100
San Diego, CA 92108
Telephone:   (619) 685-4800
Facsimile:    (619) 685-4811

Attorneys for *Plaintiff*, Bayview Loan Servicing, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*McCARTHY & HOLTHUS, LLP*
ATTORNEYS AT LAW
2763 CAMINO DEL RIO S, SUITE 100
SAN DIEGO, CALIFORNIA 92108
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA

| | |
|---|---|
| BAYVIEW LOAN SERVICING, LLC,<br><br>                                      Plaintiff,<br><br>v.<br><br>DAVE STANLEY, BERRY W MEYER, EXECUTOR OF THE ESTATE OF MELVIN ROUSE; and DOES 1 through 50 inclusive,<br><br>                                      Defendants. | Case No.  SCV-266245<br><br>**AMENDMENT TO COMPLAINT**<br><br>**[C.C.P. §474]**<br><br>Complaint Filed: April 15, 2020 |

Upon filing the Complaint herein, Plaintiff being ignorant of the true name of a defendant, and having designated defendant in the Complaint by the fictitious name of DOE 2, and having discovered the true name of the defendant to be Internal Revenue Service, Plaintiff hereby amends the Complaint by inserting true name in place and instead of such fictitious name wherever it appears in said Complaint. This amendment is made pursuant to Cal. Code of Civil Procedure § 474.

Dated: July 16, 2021

Respectfully submitted,
**McCARTHY & HOLTHUS, LLP**

By: _____
Kelsey Luu, Esq.
Attorneys for *Plaintiff*, Bayview Loan Servicing, LLC

1
**AMENDMENT TO COMPLAINT**

CA-19-872442-DCR

**McCARTHY & HOLTHUS, LLP**
Melissa Coutts, Esq. (SBN: 253345)
Seth Harris, Esq. (SBN: 253802)
411 Ivy Street
San Diego, CA 92101
Telephone:    (619) 685-4800
Facsimile:    (619) 685-4811
Email:          sharris@McCarthyHolthus.com

Attorneys for Plaintiff,
Bayview Loan Servicing, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA

| | |
|---|---|
| BAYVIEW LOAN SERVICING, LLC, | Case No. SCV-266245 |
| Plaintiff, | **AMENDMENT TO COMPLAINT** |
| v. | **[CCP § 474]** |
| DAVE STANLEY; BARRY W MEYER, EXECUTOR OF THE ESTATE OF MELVIN ROUSE; and DOES 1 through 50 inclusive, | |
| Defendants. | |

Upon filing the Complaint herein, Plaintiff being ignorant of the true name of a defendant, and having designated defendant in the Complaint by the fictitious name of DOE 1 and having discovered the true name of the defendant to be Lisa J. Stanley hereby amends the Complaint by inserting true name in place and instead of such fictitious name wherever it appears in the Complaint. This amendment is made pursuant to Cat. Code of Civil Procedure § 474.

Dated: August 27, 2020          By: _____
                                            Seth Harris, Esq.
                                            Attorneys for Plaintiff,
                                            Bayview Loan Servicing, LLC

**ORDER**
Good Cause appearing, the above amendment to the Complaint is allowed.

Dated:_____          _____
                                            Judge of the Superior Court

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
411 IVY STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

**McCARTHY & HOLTHUS, LLP**
Melissa Coutts, Esq. (SBN: 253345)
Seth Harris, Esq. (SBN: 253802)
411 Ivy Street
San Diego, CA 92101
 Telephone:   (619) 685-4800
 Facsimile:   (619) 685-4811
 Email:        sharris@McCarthyHolthus.com

Attorneys for Plaintiff,
Bayview Loan Servicing, LLC

**ELECTRONICALLY FILED**
**Superior Court of California**
**County of Sonoma**
**4/15/2020 8:00 AM**
**Arlene D. Junior, Clerk of the Court**
**By: Alexandria Hankes, Deputy Clerk**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA

| | |
|---|---|
| BAYVIEW LOAN SERVICING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DAVE STANLEY; BARRY W MEYER, EXECUTOR OF THE ESTATE OF MELVIN ROUSE; and DOES 1 through 50 inclusive,<br><br>Defendants. | Case No. SCV-266245<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. **DECLARATORY RELIEF;**<br>2. **CANCELLATION OF INSTRUMENT; and**<br>3. **PARTITION OF REAL PROPERTY& ACCOUNTING** |

Plaintiff, Bayview Loan Servicing, LLC ("Plaintiff") brings this civil action against Defendants Dave Stanley, Barry W. Meyer, Executor of the Estate of Melvin Rouse, and DOES 1 through 50 inclusive (collectively "Defendants"), for declaratory relief, cancellation of instrument as an encumbrance against real property which Plaintiff believes has been paid in full but erroneously not reconveyed, and partition of real property and accounting.

## **INTRODUCTION**

1.      This action is an action within the jurisdictional limits of this Court and this venue is appropriate because the real property in controversy is within this Court's jurisdiction.

2.      The real property on which Plaintiff seeks relief is commonly known as 815 Butler Avenue, Santa Rosa, CA 95407 ("Subject Property"). The legal description for the Subject Property is as follows:

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
411 IVY STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

- 1 -
**COMPLAINT**

CA-19-872442-DCR

BEING A PORTION OF LOT NO. 1 OF PHILIPS SUBDIVISION FILED MARCH 22, 1888, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF STONY POINT ROAD AND BUTLER AVENUE, SAID POINT BEING THE SOUTHEAST CORNER OF SAID LOT NO. 1; THENCE FROM THE SAID POINT OF BEGINNING AND ALONG THE CENTERLINE OF BUTLER AVENUE WEST 179.19 FEET; THENCE NORTH 0° 18' 20" EAST 30 FEET TO A 1/2" IRON PIPE ON THE NORTHERLY EDGE OF SAID BUTLER AVENUE SAID POINT BEING THE TRUE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE HEREIN DESCRIBED; THENCE WEST AND ALONG THE NORTHERN LINE OF SAID BUTLER AVENUE 386.68 FEET TO THE SOUTHEAST CORNER OF THE PARCEL OF LAND CONVEYED TO IRL E. DENNISON AND RUTH P. DENNISON, HIS WIFE, DATED SEPTEMBER 11, 1961, AND RECORDED SEPTEMBER 20, 1961, IN LIBER 1846 OF OFFICIAL RECORDS, PAGE 417, RECORDER'S SERIAL NO. G-64138, SONOMA COUNTY RECORDS; THENCE NORTH 0° 35' WEST AND ALONG THE EASTERN LINE OF SAID DENNISTON'S PARCEL A DISTANCE OF 411.21 FEET; THENCE NORTH 89° 47' 30" EAST AND ALONG THE CENTER LINE OF SAID LOT 1,404.38 FEET TO THE NORTHWEST CORNER OF THE PARCEL OF LAND CONVEYED TO JOSEPH S. ANDRUS AND MILDRED LAVONNE ANDRUS, HIS WIFE, DATED JULY 7, 1960 AND RECORDED SEPTEMBER 23, 1960 AND RECORDED SEPTEMBER 23, 1960, IN LIBER 1785 OF OFFICIAL RECORDS, PAGE 237, RECORDER'S SERIAL NO. G-24700, SONOMA COUNTY RECORDS; THENCE SOUTH AND ALONG THE WESTERN LINE OF SAID ANDRUS PARCEL OF FOLLOWING COURSES AND DISTANCES SOUTH 0° 24' 30" EAST 192.81 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 20.25 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 29.70 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 57.56 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 89° 41' 40" EAST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 130.57 FEET TO THE TRUE POINT OF BEGINNING.

3.      Plaintiff is the owner of fifty percent (50%) in the Subject Property which is co-owned by Dave Stanley, herein named as defendant.

4.      Defendant Dave Stanley ("Stanley") is an individual believed to be residing in Sonoma County, California who has a present 50% ownership interest in the Subject Property.

5.      Defendant Barry W. Meyer ("Meyer"), executor of the Estate of Melvin Rouse is an individual acting in his capacity as executor and has a security interest in the Subject Property as the beneficiary of a deed of trust.

6.      Plaintiff does not know the true names, capacities, or bases of liability of Defendants sued as DOES 1 through 50 inclusive. Each fictitiously named defendant is in some way liable to Plaintiff or claims some right, title, or interest in the Subject Property that is subsequent to and subject to the interest of Plaintiff or both. DOES are sued herein pursuant to California Code of

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
411 IVY STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

CA-19-872442-DCR

Civil Procedure section 474. Plaintiff will amend this Complaint to reflect the true names of said Defendants when the same have been ascertained.

7.    Plaintiff is informed, believes, and based thereon alleges that at all relevant times, certain of the Defendants, including DOE Defendants, and each of them, were acting as the agents, servants, employees, alter egos, successors or predecessors in interest, or contractors of other of the Defendants, and were acting within the course and scope of such relationship, with the knowledge, express or implied, of each such other named defendant.

## FACTUAL BACKGROUND

8.    Plaintiff re-alleges the allegations of Paragraphs 1-7 above.

9.    Plaintiff is informed and believes and thereon alleges that on or about June 17, 2002, Zachary Yates and Lindsey Yates, executed a Deed of Trust secured by the Subject Property, and is in favor of Defendant Barry W Meyer, Executor of the Estate of Melvin Rouse, Deceased, Sonoma County Superior Court Probate Case No. 071493 ("2002 Deed of Trust"). The Senior Deed of Trust was recorded in the Sonoma County Recorder's Office on June 19, 2002 as Instrument No. 2002094007. A true and correct copy of the Senior Deed of Trust is attached hereto as Exhibit 1.

10.    On or about June 23, 2006, Bill Cileo, a married man as his sole and separate property, as to an undivided 50% interest and Dave Stanley, a married man as his sole and separate property, as to an undivided 50% interest acquired their ownership interest in the Subject Property by a Grant Deed from Lindsay Yates. A true and correct copy of the Grant Deed is attached hereto as Exhibit 2.

11.    On or about November 22, 2006, Bill F. Cileo transferred the property via Interspousal Transfer Grant Deed to Bill F. Cileo and Paula M. Cileo, husband and wife as joint tenants. A true and correct copy of the Grant Deed is attached hereto as Exhibit 3.

12.    On or about November 22, 2006, Bill F. Cileo and Paula M. Cileo, executed a Deed of Trust in the amount of $400,000.00 which was secured by the Subject Property. ("2006 Deed of Trust"). A true and correct copy of this Deed of Trust is attached hereto as Exhibit 4.

/ / / /

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
411 IVY STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

13. The 2006 Deed of Trust only encumbered a 50% interest in the property as Dave Stanley was not a trustor.

14. Through various Assignment, Plaintiff became the beneficiary of the 2006 Deed of Trust.

15. On June 4, 2018, a foreclosure sale of the Subject Property was held wherein the property reverted back to Plaintiff via credit bid. A true and correct copy of the Corrective Trustee's Deed Upon Sale transferring the Cileos' 50% interest in the property to Plaintiff is attached hereto as Exhibit 5.

16. Plaintiff is informed, believes, and based thereon alleges that the 2006 Deed of Trust was intended to be a first-priority, senior encumbrance on the Subject Property.

17. Plaintiff is further informed and believes and thereon alleges that the 2002 Deed of Trust should have been reconveyed but through error or inadvertence, has not been reconveyed and therefore appears in the chain of title as a present encumbrance on the Subject Property.

18. Plaintiff is requesting the 2002 Deed of Trust be cancelled as an encumbrance against the Subject Property.

19. Plaintiff seeks partition of the entire fee simple interest in the Real Property.

20. There are no liens or encumbrances on the property, other than the 2002 Deed of Trust seeking to be cancelled, appearing of record or otherwise known to Plaintiff or apparent from an inspection of the property.

21. Prior to the commencement of this action, it was necessary for plaintiff to procure a title report in the form of a Litigation Guarantee for a reasonable expense. The title report is, and will be, kept available for inspection, copying, and use by the parties by Plaintiff's counsel.

## **FIRST CAUSE OF ACTION**

### **(Declaratory Relief against all Defendants.)**

22. Plaintiff re-alleges the allegations of Paragraphs 1-21 above.

23. Plaintiff is informed, believes, and based thereon alleges that the 2002 Deed of Trust is satisfied in full, but Meyer failed and continues to fail to record a reconveyance to the 2002 Deed of Trust thereby improperly encumbering the Subject Property.

- 4 -

CA-19-872442-DCR

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
4th ONY STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

24.     Plaintiff is informed, believes, and based thereon alleges that Meyer and DOE Defendants will dispute these contentions and contend that the 2002 Deed of Trust is not satisfied or contend the 2002 Deed of Trust should not be released as an encumbrance against the Subject Property.

25.     Plaintiff is informed, believes, and based thereon alleges that an actual controversy has arisen, and now exists between Plaintiff and Defendants, and each of them, concerning their respective rights and duties in the Subject Property, and their respective encumbrances.

26.     Plaintiff desires a judicial determination of its rights and duties, and a declaration as to its security interest in the Subject Property.

27.     A judicial declaration is necessary and appropriate at this time under the circumstances in order for Plaintiff to confirm its rights and duties under the respective encumbrances and so Defendants, and each of them, can confirm their respective rights, obligations, titles and interests in the Subject Property.

28.     Plaintiff seeks a judicial declaration that the 2002 Deed of Trust has been paid in full and is released as an encumbrance against the Subject Property.

## SECOND CAUSE OF ACTION

### (Cancellation of Instrument against all Defendants)

29.     Plaintiff re-alleges the allegations of Paragraphs 1-28 above.

30.     Plaintiff is informed, believes, and based thereon alleges that the 2002 Deed of Trust is void because the underlying obligation has been paid in full prior to or at the time that the Cileos obtained the loan secured by the 2006 Deed of Trust.

31.     As the obligation secured by 2002 Deed of Trust was paid in full, it should be cancelled and be deemed reconveyed so it no longer holds any encumbrance against the Subject Property.

## THIRD CAUSE OF ACTION

### (Partition of Real Property & Accounting against Stanley and DOES)

32.     Plaintiff re-alleges the allegations of Paragraphs 1-31 above.

33.     Plaintiff requests that the Subject Property be partitioned by sale. Such mode of

- 5 -

partition is more equitable in the circumstances than partition by physical division for the reason that the Subject Property contains a single-family building which is not susceptible to physical division.

34. This action is brought and partition is sought herein, for the common benefit of the parties, to preserve and secure to each of them their respective interest and rights in the property, and Plaintiff has incurred, and will incur, costs of partition herein, including reasonable attorney's fees, for the common benefit of the parties hereto, in an amount to be proven at trial.

35. Since June 26, 2018, Stanley has collected and received from the tenants in possession of certain units in the Subject Property all the rents and profits from the real property.

36. Plaintiff hereby demands of Stanley that he account to Plaintiff for any and all sums so received by him, and that Stanley pay to Plaintiff its 50% share thereof. Stanley has thus far failed and refused to make such accounting or to pay to Plaintiff the sums due to it and still fails and refuses to do so.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For an Order declaring the 2002 Deed of Trust recorded in the Sonoma County Recorder's Office on June 19, 2002 as Instrument Number 2002094007 be cancelled and deemed reconveyed so it is no longer an encumbrance against the Subject Property;

2. For partition by sale of the Subject Property according to the respective rights of the parties hereto;

3. For the expense reasonably incurred by Plaintiff in obtaining a title report of the real property in the form of a Litigation Guarantee, together with interest at the rate of ten (10%) percent per annum from the date of filing of the complaint, and for their respective pro rata shares of other costs of partition, including but not limited to reasonable attorney's fees, as deter-mined by the Court, which judgment shall be secured by a lien on the respective interests of defendants, and each of them, in the Subject Property or proceeds of sale of the Subject Property;

4. For an accounting from Stanley and payment of Plaintiff's 50% share in the rents collected since June 26, 2018;

5. For costs of suit herein incurred;

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
411 IVY STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

CA-19-872442-DCR

6. For any other further relief as the court may deem proper.

Dated: March 26, 2020

Respectfully submitted,
**McCARTHY & HOLTHUS, LLP**

By:_____
Seth Harris, Esq.
Attorneys for Plaintiff,
Bayview Loan Servicing, LLC

**COMPLAINT**

McCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
411 IVY STREET
SAN DIEGO, CALIFORNIA, 92101
TELEPHONE (619) 685-4800 FACSIMILE (619) 685-4811

CA-19-872442-DCR

EXHIBIT 1

RECORDING REQUESTED BY
North Bay Title Company
AND WHEN RECORDED MAIL TO

Name  Barry W. Meyer, Executor of the Est. of
      Rouse
Street
Address  131 A Slony Circle, Ste 500
      Santa Rosa, Ca
City State  95401
Zip



NORTH BAY TITLE CO.
06/19/2002 08:00 TRD
RECORDING FEE: 26.00

**2002094007**

OFFICIAL RECORDS OF
SONOMA COUNTY
EEVE T. LEWIS

**5**



SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (This Deed of Trust contains a "DUE-ON-SALE" clause)

This DEED OF TRUST, made 14th day of June, 2002 between
                                          /as husband and wife
ZACHARY YATES & LINDSEY YATES, herein called TRUSTOR,
whose address is , 4401 Price Ave.,Santa Rosa, CA 95407
                  (Number and Street)        (City)           (State)           (Zip)

NORTH BAY TITLE COMPANY, a California Corporation, herein called TRUSTEE, and

BARRY W MEYER, EXECUTOR OF THE ESTATE OF MELVIN ROUSE, DECEASED, SONOMA COUNTY
SUPERIOR COURT PROBATE CASE NO. 071493 _____, herein called BENEFICIARY,

WITNESSETH; That Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that
property in the
UNINCORPORATED, County of SONOMA, State of California, described as;

**See Exhibit A attached hereto and made a part hereof.**

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein
in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall
have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note
evidencing the same, immediately due and payable.

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon
Beneficiary to collect and apply such rents, issues and profits

For the Purpose of Securing (1) payment of the sum of $410,000.00, with interest thereon according to the terms of a promissory note or notes of
even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of
Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may
hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed
of Trust

Page 1 of 5

228521

A. To protect the security of this Deed of Trust, Trustor agrees:

(1) To keep said property in good condition and repair not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:

(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plate thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then hereunder. The recitals in such reconveyance of any matter or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuances of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the persons legally entitled thereto.

228821

Description: Sonoma,CA Document - Year.DocID 2002.94007 Page: 2 of 5

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at this address hereinbefore set forth.

STATE OF CALIFORNIA
COUNTY OF SONOMA_____



E.S. Zachary Yates

Lindsey Yates

On __June 17, 2002__ before me,
__R S Firebaugh__
a Notary Public in and for said County and State, personally appeared
— Zachary Yates and
Lindsey Yates —
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(This area for official notorial seal)

Commission #1265475
Exp. 05/27/04
MGC1

R. S. FIREBAUGH
COMM. # 1265475
NOTARY PUBLIC-CALIFORNIA
SONOMA COUNTY
COMM. EXP. MAY 27, 2004

228821

**REQUEST FOR FULL RECONVEYANCE**
TO North Bay Title Company  TRUSTEE:

The undersigned is the legal owner and holder of the note or notes, and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same

Dated _____

Signature must be notarized _____

**Please mail Deed of Trust,**
**Note and Reconveyance to** _____

STATE OF CALIFORNIA
COUNTY OF _____ } ss

On _____ before me,

_____

a Notary Public in and for said County and State, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature_____     (This area for official notarial seal)

<u>Do not lose or destroy this **DEED OF TRUST** or the **NOTE** which it secures.  Both must be delivered to the Trustee for cancellation before reconveyance will be made.</u>

228821

Description: Sonoma,CA Document - Year.DocID 2002.94007 Page: 4 of 5

## Exhibit A

Situated in the State of California, Unincorporated Area, County of Sonoma, and described as follows:

Being a portion of Lot No 1 of Phillips Subdivision filed March 22, 1889 and more particularly described as follows.

Beginning at the intersection of Stony Point Road and Butler Avenue, said point being the Southeast corner of said Lot 1; thence from the said point of beginning and along the centerline of Butler Avenue West 179.19 feet; thence North 0° 18' 20" East 30 feet to a ½" iron pipe on the Northerly edge of said Butler Avenue said point being the true point of beginning of the parcel of land to be herein described; thence West and along the Northern line of said Butler Avenue 386.68 feet to the Southeast corner of the parcel of land conveyed to Irl E  Denniston and Ruth P. Denniston, his wife, dated September 11, 1961 and recorded September 20, 1961 in Liber 1846 of Official Records, Page 417, Recorder's Serial No. G64138, Sonoma County Records; thence North 0° 35' West and along the Eastern line of said Denniston's Parcel a distance of 411.21 feet; thence North 89° 47' 30" East and along the center line of said Lot 1, 404.38 feet to the Northwest corner of the parcel of land conveyed to Joseph S. Andrus and Mildred LaVonne Andrus, his wife, dated July 7, 1960 and recorded September 23, 1960 in Liber 1785 of Official Records, Page 237, Recorder's Serial No  G24700. Sonoma County Records; thence South and along the Western line of said Andrus Parcel the following courses and distances:  South 0° 24' 30" East 192.81 feet to a ½ inch iron pipe; thence North 89° 41' 40" West 20.25 feet to a ½ inch iron pipe; thence South 0° 18' 20" West 29.70 feet to a ½ inch iron pipe, thence North 89° 41' 40" West 14 87 feet to a ½ inch iron pipe, thence South 0° 18' 20" West 57.65 feet to a 1.2 inch iron pipe, thence South 89° 41' 40" East 14 87 feet to a ½ inch iron pipe; thence South 0° 18' 20" West 130 57 feet to the true point of beginning

(134-061-026-000)

EXHIBIT 2



**2006078408**

OFFICIAL RECORDS OF
SONOMA COUNTY
FIRST AMERICAN TITLE CO. EEVE T. LEWIS
06/23/2006 08:00 DEED
RECORDING FEE: 10.00        **2**      PGS
COUNTY TAX:      752.40
PAID

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
Bill Cileo
2295 Melbrook
Santa Rosa, CA 95405



_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 134-061-026-000                                 File No.:

## GRANT DEED

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $752.40; CITY TRANSFER TAX  n/a
SURVEY MONUMENT FEE $
[   X   ]  computed on the consideration or full value of property conveyed, OR
[   x   ]  computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,
[   x   ]  unincorporated area;  [   ]  City of Santa Rosa, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Lindsay Yates, a married woman as her sole and separate property**

hereby GRANTS to **Bill Cileo, a married man as his sole and separate property to an undivided 50% interest and Dave Stanley, a married man as his sole and separate property, to an undivided 50% interest**

the following described property in the ⋁ County of **Sonoma**, State of **California**:
                                            unincorporated area of the

**BEING A PORTION OF LOT NO. 1 OF PHILLIPS SUBDIVISION FILED MARCH 22, 1889, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**BEGINNING AT THE INTERSECTION OF STONY POINT ROAD AND BUTLER AVENUE, SAID POINT BEING THE SOUTHEAST CORNER OF SAID LOT NO. 1; THENCE FROM THE SAID POINT OF BEGINNING AND ALONG THE CENTERLINE OF BUTLER AVENUE WEST 179.19 FEET; THENCE NORTH 0° 18' 20" EAST 30 FEET TO A 1/2" IRON PIPE ON THE NORTHERLY EDGE OF SAID BUTLER AVENUE SAID POINT BEING THE TRUE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE HEREIN DESCRIBED; THENCE WEST AND ALONG THE NORTHERN LINE OF SAID BUTLER AVENUE 386.68 FEET TO THE SOUTHEAST CORNER OF THE PARCEL OF LAND CONVEYED TO IRL E. DENNISON AND RUTH P. DENNISON, HIS WIFE, DATED SEPTEMBER 11, 1961, AND RECORDED SEPTEMBER 20, 1961, IN LIBER 1846 OF OFFICIAL RECORDS, PAGE 417, RECORDER'S SERIAL NO. G-64138, SONOMA COUNTY RECORDS; THENCE NORTH 0° 35' WEST AND ALONG THE EASTERN LINE OF SAID DENNISTON'S PARCEL A DISTANCE OF 411.21 FEET; THENCE NORTH 89° 47' 30" EAST AND ALONG THE CENTER LINE OF SAID LOT 1,404.38 FEET TO THE NORTHWEST CORNER OF THE PARCEL OF LAND CONVEYED TO JOSEPH S. ANDRUS AND MILDRED LAVONNE ANDRUS, HIS WIFE, DATED JULY 7, 1960 AND RECORDED SEPTEMBER 23, 1960 AND RECORDED SEPTEMBER 23, 1960, IN LIBER 1785 OF OFFICIAL RECORDS, PAGE 237, RECORDER'S SERIAL NO. G-24700, SONOMA COUNTY RECORDS; THENCE SOUTH AND ALONG THE WESTERN LINE OF SAID ANDRUS PARCEL OF FOLLOWING COURSES AND DISTANCES SOUTH 0° 24' 30" EAST 192.81 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 20.25 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 29.70 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 57.56 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 89° 41' 40" EAST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 130.57 FEET TO THE TRUE POINT OF BEGINNING.**

Mail Tax Statements To:  **SAME AS ABOVE**

A.P.N.: **134-061-026-000**          Grant Deed - continued

**(DM)**
**Date: 05/31/2006**

*Lindsay Yates*
Lindsay Yates

STATE OF _California_ )SS
COUNTY OF _Sonoma_

On _5-31-06_, before me, _D Majcherek_,
Notary Public, personally appeared _Lindsay Yates_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

My Commission Expires: _____        *This area for official notarial seal*

Notary Name:_____
Notary Registration  Number:_____

Notary Phone:_____
County of Principal Place of Business:_____

D. MAJCHEREK
COMM. #1574482
NOTARY PUBLIC ·CALIFORNIA
SONOMA COUNTY
My Comm. Expires April 29, 2009

Page **2** of **2**

EXHIBIT 3

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
Bill F. Cileo and Paula M. Cileo
.2295 Melbrook Way
Santa Rosa, CA 95405



**2006145822**

OFFICIAL RECORDS OF
SONOMA COUNTY
FIRST AMERICAN TITLE CO. EEVE T. LEWIS
11/22/2006 14:03 DEED
RECORDING FEE: 13.00    **3**    PGS
PAID



___Space Above This Line for Recorder's Use Only___

A.P.N.: 134-061-026                                   ▬▬▬▬▬(DM)

## INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from Reappraisal under California Constitution Article 13A □ 1 et seq.)

The Undersigned Grantor(s) declare(s): DOCUMENTARY TRANSFER TAX **$-0-**; CITY TRANSFER TAX **$-0-**;
SURVEY MONUMENT FEE $
This conveyance is solely between spouses and is EXEMPT from the imposition of the Documentary Transfer Tax
pursuant to Section 11930 and/or 11911 et seq. of the Revenue and Taxation Code.

This is an Interspousal Transfer and not a change in ownership under Section 63 of the Revenue and Taxation
Code, and transfer by Grantor(s) is excluded from reappraisal as a creation, transfer, or termination, solely
between the spouses of any co-owner's interest.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Bill Cileo, who acquired title as
a married man, as his sole and separate property**

hereby GRANTS to **Bill F. Cileo and Paula M. Cileo, husband and wife as joint tenants**

the following described property in the City of **Santa Rosa**, County of **Sonoma**, State of **California**:

      **Attached hereto as Exhibit A.**

Dated: ___11/14/2006___

_____
**Bill Cileo**

Mail Tax Statements To: **SAME AS ABOVE**
-------------------------------------------------------------------------------------------

A.P.N.: 134-061-026                                              ████████ (DM)

STATE OF _Calefornia_ )SS
COUNTY OF _Sonoma_ )

On _11-14-06_, before me, _D Majcherek_,
Notary Public, personally appeared
_Bill Cileo_, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Dmell_

D. MAJCHEREK
COMM. #1574482
NOTARY PUBLIC -CALIFORNIA
SONOMA COUNTY
My Comm. Expires April 29, 2009

My Commission Expires: _____          *This area for official notarial seal*

Notary Name:_____     Notary Phone:_____
Notary Registration Number:_____     County of Principal Place of Business:_____

Page 2

Reference No.: CILEO
Escrow Officer: Majcherek, Deana

## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of SONOMA, State of California,** and described as follows:

**BEING A PORTION OF LOT NO. 1 OF PHILLIPS SUBDIVISION FILED MARCH 22, 1889, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**BEGINNING AT THE INTERSECTION OF STONY POINT ROAD AND BUTLER AVENUE, SAID POINT BEING THE SOUTHEAST CORNER OF SAID LOT NO. 1; THENCE FROM THE SAID POINT OF BEGINNING AND ALONG THE CENTERLINE OF BUTLER AVENUE WEST 179.19 FEET; THENCE NORTH 0° 18' 20" EAST 30 FEET TO A 1/2" IRON PIPE ON THE NORTHERLY EDGE OF SAID BUTLER AVENUE SAID POINT BEING THE TRUE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE HEREIN DESCRIBED; THENCE WEST AND ALONG THE NORTHERN LINE OF SAID BUTLER AVENUE 386.68 FEET TO THE SOUTHEAST CORNER OF THE PARCEL OF LAND CONVEYED TO IRL E. DENNISON AND RUTH P. DENNISON, HIS WIFE, DATED SEPTEMBER 11, 1961, AND RECORDED SEPTEMBER 20, 1961, IN LIBER 1846 OF OFFICIAL RECORDS, PAGE 417, RECORDER'S SERIAL NO. G-64138, SONOMA COUNTY RECORDS; THENCE NORTH 0° 35' WEST AND ALONG THE EASTERN LINE OF SAID DENNISTON'S PARCEL A DISTANCE OF 411.21 FEET; THENCE NORTH 89° 47' 30" EAST AND ALONG THE CENTER LINE OF SAID LOT 1,404.38 FEET TO THE NORTHWEST CORNER OF THE PARCEL OF LAND CONVEYED TO JOSEPH S. ANDRUS AND MILDRED LAVONNE ANDRUS, HIS WIFE, DATED JULY 7, 1960 AND RECORDED SEPTEMBER 23, 1960 AND RECORDED SEPTEMBER 23, 1960, IN LIBER 1785 OF OFFICIAL RECORDS, PAGE 237, RECORDER'S SERIAL NO. G-24700, SONOMA COUNTY RECORDS; THENCE SOUTH AND ALONG THE WESTERN LINE OF SAID ANDRUS PARCEL OF FOLLOWING COURSES AND DISTANCES SOUTH 0° 24' 30" EAST 192.81 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 20.25 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 29.70 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 57.56 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 89° 41' 40" EAST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 130.57 FEET TO THE TRUE POINT OF BEGINNING.**

APN No: **134-061-026-000**

Page 7

EXHIBIT 4



**2006145823**

OFFICIAL RECORDS OF
SONOMA COUNTY
EEVE T. LEWIS

FIRST AMERICAN TITLE CO.
11/22/2006 14:03 TRD    **23**   PGS
RECORDING FEE: 73.00
PAID

Recording Requested By:
SCME MORTGAGE BANKERS, INC.

Return To:
SCME MORTGAGE BANKERS, INC. c/o NATIONWIDE
TITLE CLEARING, INC. ATTN: FINAL DOCS UNIT

2100 ALT 19 NORTH
PALM HARBOR, FL 34683
Prepared By:

────────────────[Space Above This Line For Recording Data]────────────────

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     **NOVEMBER 13, 2006**
together with all Riders to this document.
(B) "Borrower" is
BILL F. CILEO AND PAULA M. CILEO, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is 2295 MELBROOK WAY, SANTA ROSA, CA 95405
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION

Lender is a CORPORATION
organized and existing under the laws of CALIFORNIA

Initials 

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS     Form 3005 1/01
V-6A(CA) (0207).01       Page 1 of 15     LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/06)

Lender's address is
6265 GREENWICH DRIVE, #200, SAN DIEGO, CA 92122

(D) "Trustee" is
STEWART TITLE COMPANY OF SAN DIEGO, A california corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated       NOVEMBER 13, 2006
The Note states that Borrower owes Lender

FOUR HUNDRED THOUSAND AND NO/100 X X X X X X X X X X X X X X X X X X X X X X X X X X
                                                            Dollars
(U.S. $ 400,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   DECEMBER 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [XX] 1-4 Family Rider |
|---|---|---|
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

V-6A(CA) (0207).01               Page 2 of 15               Initials           Form 3005 1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of SONOMA :
[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 134-081-026-000       which currently has the address of
815 BUTLER AVENUE       [Street]
SANTA ROSA       [City] , California    95407    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _BPC_

V-6A(CA) (0207).01       Page 3 of 15       Form 3005 1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

V-6A(CA) (0207).01                      Page 4 of 15                              Initials: _____  Form 3005 1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

V-6A(CA) (0207).01          Page 7 of 15          Initials _PC_    Form 3005 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

V-6A(CA) (0207).01        Page 8 of 15        Initials: _PC_    Form 3005 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

V-6A(CA) (0207).01                    Page 9 of 15                  Initials:                    Form 3005 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

V-6A(CA) (0207).01                      Page 10 of 15                      Initials: *PC*                Form 3005  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

V-6A(CA) (0207).01                Page 12 of 15              Initials: _PC_   Form 3005 1/01

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

V-6A(CA) (0207).01              Page 13 of 15             Initials: _PC_    Form 3005 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness


_____ (Seal)
BILL F. CILEO      -Borrower

_____ (Seal)
PAULA M. CILEO      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

V-6A(CA) (0207).01          Page 14 of 15          Form 3005  1/01

State of  CALIFORNIA
County of  Sonoma                                              } ss.

On  11-14-06          before me,  DMajcherek, notary Public
                                                            personally appeared

**BILL F. CILEO AND PAULA M. CILEO**

, ~~personally~~ known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



D. MAJCHEREK
COMM. #1574482
NOTARY PUBLIC ·CALIFORNIA
SONOMA  COUNTY
My Comm. Expires April 29, 2009

V-6A(CA) (0207).01                Page 15 of 15                Initials: PC    Form 3005  1/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   13th   day of   NOVEMBER, 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
815 BUTLER AVENUE, SANTA ROSA, CA 95407
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

Initials _____

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01
V-57R (0411).01    Page 1 of 3    LENDER SUPPORT SYSTEMS INC. 57R.NEW (06/06)

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials _PL_

V-57R (0411).01　　　　　　　　　Page 2 of 3　　　　　　　　　Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
BILL F. CILEO                                    -Borrower

_Paula m Cileo_ (Seal)
PAULA M. CILEO                          -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

**V-57R (0411).01**            **Page 3 of 3**            **Form 3170 1/01**

Assessor's Parcel Number:
134-061-026-000
After Recording Return To:
SCME MORTGAGE BANKERS, INC. c/o NATIONWIDE TITLE
CLEARING, INC. ATTN:  FINAL DOCS UNIT
2100 ALT 19 NORTH
PALM HARBOR, FL  34683

Prepared By:


( )  -
—————————————[Space Above This Line For Recording Data]—————————————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)


THIS FIXED/ADJUSTABLE RATE RIDER is made this  13th day of     NOVEMBER, 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
SCME MORTGAGE BANKERS, INC., A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:
815 BUTLER AVENUE, SANTA ROSA, CA  95407
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN
ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S
ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM
RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of    7.125    %.  The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:


Conv
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266  (0603)              Page 1 of 4     LENDER SUPPORT SYSTEMS, INC. COU-4266.COU (04/06)


Initials

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of DECEMBER, 2011 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE QUARTER        percentage points (   2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.125 % or less than 2.250 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Conv
● **MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family**
**INTEREST ONLY**
**FE-4266 (0603)**              Page 2 of 4          Initials *PC*

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
   1. UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

     If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

     If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   2. AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

     If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

     To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Conv
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266 (0603)          Page 3 of 4       Initials: _PC_

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

I understand that for the Interest Only Period my monthly payments will not reduce the Principal balance on my loan. My monthly payments after the Interest Only Period will consist of both Principal and interest and will be higher unless I have made additional payments to reduce the Principal balance.

_____ (Seal)  _____ (Seal)
BILL F. CILEO      -Borrower  PAULA M. CILEO     -Borrower

_____ (Seal)  _____ (Seal)
          -Borrower             -Borrower

_____ (Seal)  _____ (Seal)
          -Borrower             -Borrower

_____ (Seal)  _____ (Seal)
          -Borrower             -Borrower

Conv
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266 (0603)        Page 4 of 4



## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of SONOMA, State of California,** and described as follows:

**BEING A PORTION OF LOT NO. 1 OF PHILLIPS SUBDIVISION FILED MARCH 22, 1889, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**BEGINNING AT THE INTERSECTION OF STONY POINT ROAD AND BUTLER AVENUE, SAID POINT BEING THE SOUTHEAST CORNER OF SAID LOT NO. 1; THENCE FROM THE SAID POINT OF BEGINNING AND ALONG THE CENTERLINE OF BUTLER AVENUE WEST 179.19 FEET; THENCE NORTH 0° 18' 20" EAST 30 FEET TO A 1/2" IRON PIPE ON THE NORTHERLY EDGE OF SAID BUTLER AVENUE SAID POINT BEING THE TRUE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE HEREIN DESCRIBED; THENCE WEST AND ALONG THE NORTHERN LINE OF SAID BUTLER AVENUE 386.68 FEET TO THE SOUTHEAST CORNER OF THE PARCEL OF LAND CONVEYED TO IRL E. DENNISON AND RUTH P. DENNISON, HIS WIFE, DATED SEPTEMBER 11, 1961, AND RECORDED SEPTEMBER 20, 1961, IN LIBER 1846 OF OFFICIAL RECORDS, PAGE 417, RECORDER'S SERIAL NO. G-64138, SONOMA COUNTY RECORDS; THENCE NORTH 0° 35' WEST AND ALONG THE EASTERN LINE OF SAID DENNISTON'S PARCEL A DISTANCE OF 411.21 FEET; THENCE NORTH 89° 47' 30" EAST AND ALONG THE CENTER LINE OF SAID LOT 1,404.38 FEET TO THE NORTHWEST CORNER OF THE PARCEL OF LAND CONVEYED TO JOSEPH S. ANDRUS AND MILDRED LAVONNE ANDRUS, HIS WIFE, DATED JULY 7, 1960 AND RECORDED SEPTEMBER 23, 1960 AND RECORDED SEPTEMBER 23, 1960, IN LIBER 1785 OF OFFICIAL RECORDS, PAGE 237, RECORDER'S SERIAL NO. G-24700, SONOMA COUNTY RECORDS; THENCE SOUTH AND ALONG THE WESTERN LINE OF SAID ANDRUS PARCEL OF FOLLOWING COURSES AND DISTANCES SOUTH 0° 24' 30" EAST 192.81 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 20.25 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 29.70 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89° 41' 40" WEST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 57.56 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 89° 41' 40" EAST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0° 18' 20" WEST 130.57 FEET TO THE TRUE POINT OF BEGINNING.**

APN No: **134-061-026-000**

EXHIBIT 5

**This document was electronically submitted to the County of Sonoma for recording**

# 2018046059

Official Records of Sonoma County
William F. Rousseau
06/27/2018 02:04 PM
FIRST AMERICAN MORTGAGE SOLUTIONS - TSG

TDEED 4 Pgs

Fee: $98.00

Recording requested by:
**First American Mortgage Solutions**

And when recorded mail to:

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd
5th Fl Mailroom
Coral Gables, FL 33146

Forward tax statements to the address given above

Space above this line for recorders use

# Corrective Trustee's Deed Upon Sale

***THIS DOCUMENT IS BEING RECORDED TO CORRECT THE VESTING ON THE TRUSTEE'S DEED UPON SALE THAT RECORDED ON 06/21/2018 AS INSTRUMENT NUMBER 2018044649***

A.P.N.: **134-061-026-000**

**Exempt pursuant to Cal Rev and Tax Code §11926**

THE UNDERSIGNED GRANTOR DECLARES:

The Grantee Herein IS the Foreclosing Beneficiary

| | |
|---|---|
| The amount of the unpaid debt together with costs was: | **$640,544.46** |
| The amount paid by the grantee at the trustee sale was: | **$640,544.46** |
| The documentary transfer tax is: | NONE |

Said property is in the City of: **SANTA ROSA**, County of **SONOMA**

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**BAYVIEW LOAN SERVICING, LLC**

FATICO submits this document for recordation as a courtesy for physical convenience only. FATICO has not examined this document for its validity, sufficiency, or effect, if any, upon title to the real property described herein.

*When recorded mail and send tax statement to:*
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd
5th Fl Mailroom
Coral Gables, FL 33146

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **SONOMA**, State of California, described as follows:

**BEING A PORTION OF LOT NO. 1 OF PHILLIPS SUBDIVISION FILED MARCH 22, 1889, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE INTERSECTION OF STONY POINT ROAD AND BUTLER AVENUE, SAID POINT BEING THE SOUTHEAST CORNER OF SAID LOT NO. 1; THENCE FROM THE SAID POINT OF BEGINNING AND ALONG THE CENTERLINE OF BUTLER AVENUE WEST 179.19 FEET; THENCE NORTH 0°18' 20" EAST 30 FEET TO A 1/2" IRON PIPE ON THE NORTHERLY EDGE OF SAID BUTLER AVENUE SAID POINT BEING THE TRUE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE HEREIN DESCRIBED; THENCE WEST AND ALONG THE NORTHERN LINE OF SAID BUTLER AVENUE 386.68 FEET TO THE SOUTHEAST CORNER OF THE PARCEL OF LAND CONVEYED TO IRL E. DENNISON AND RUTH P. DENNISON, HIS WIFE, DATED SEPTEMBER 11,1961, AND RECORDED SEPTEMBER 20, 1961, IN LIBER 1846 OF OFFICIAL RECORDS, PAGE 417, RECORDER'S SERIAL NO.G-64138, SONOMA COUNTY RECORDS; THENCE NORTH 0°35' WEST AND ALONG THE EASTERN LINE OF SAID DENNISTON'S PARCEL A DISTANCE OF 411.21FEET; THENCE NORTH 89°47' 30" EAST AND ALONG THE CENTER LINE OF SAID LOT 1,404.38 FEET TO THE NORTHWEST CORNER OF THE PARCEL OF LAND CONVEYED TO JOSEPH S.ANDRUS AND MILDRED LAVONNE ANDRUS, HIS WIFE, DATED JULY 7,1960 AND RECORDED SEPTEMBER 23,1960 AND RECORDED SEPTEMBER 23,1960, IN LIBER 1785 OF OFFICIAL RECORDS, PAGE 237, RECORDER'S SERIAL NO.G-24700, SONOMA COUNTY RECORDS; THENCE SOUTH AND ALONG THE WESTERN LINE OF SAID ANDRUS PARCEL OF FOLLOWING COURSES AND DISTANCES SOUTH 0 24' 30" EAST 192.81 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89°41' 40" WEST 20.25 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0°18' 20" WEST 29.70 FEET TO A 1/2 INCH IRON PIPE; THENCE NORTH 89°41' 40" WEST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0°18'20" WEST 57.56 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 89°41' 40" EAST 14.87 FEET TO A 1/2 INCH IRON PIPE; THENCE SOUTH 0°18' 20" WEST 130.57 FEET TO THE TRUE POINT OF BEGINNING.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by 50% interest holders, **BILL F. CILEO AND PAULA M. CILEO, HUSBAND AND WIFE AS JOINT TENANTS**, as trustor, dated 11/13/2006, and recorded on 11/22/2006 as instrument number 2006145823 of Official Records in the office of the Recorder of **SONOMA**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **10/13/2017**, instrument no **2017079608**, Book xx, Page xx, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

*When recorded mail and send tax statement to:*
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd
5th Fl Mailroom
Coral Gables, FL 33146

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **6/4/2018** at the place named in the Notice of Sale, in the County of **SONOMA,** California, in which the property is situated. The foreclosing beneficiary, being the higgest at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$640,544.46** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust and instructed said trustee to vest this Trustee's Deed Upon Sale to said Grantee

*When recorded mail and send tax statement to:*
Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd
5th Fl Mailroom
Coral Gables, FL 33146

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: 6/26/2018

**QUALITY LOAN SERVICE CORPORATION**

By: Bounlet Louvan, Assistant Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California**)

County of: **San Diego**)

On **JUN 2 6 2018** before me, **Katherine A. Davis** a notary public, personally appeared Bounlet Louvan , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.     (Seal)

Signature _____ Katherine A. Davis

KATHERINE A. DAVIS
COMM. #2095368
Notary Public · California
San Diego County
My Comm. Expires Dec. 29, 2018

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF SONOMA**<br>**CIVIL DIVISION**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>sonoma.courts.ca.gov | (FOR COURT USE ONLY)<br>**FILED**<br>03/10/2021<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA<br>By: *Cynthia Gaddie*<br>Cynthia Gaddie, Deputy Clerk |
| **BAYVIEW LOAN SERVICING, LLC**<br>**VS**<br>**STANLEY** | Case number:<br>SCV-266245 |
| **NOTICE OF MANDATORY SETTLEMENT**<br>**CONFERENCE AND TRIAL** | |

YOU ARE NOTIFIED THAT PROCEEDINGS WILL BE HELD AS FOLLOWS:

### Mandatory Settlement Conference:

The case is ordered to participate in a mandatory settlement conference no later than 30 days prior to trial. Counsel for Plaintiff(s) is ordered to contact the Sonoma County Bar Association within 5 days to request the name of the next available settlement panelist and to contact the panelist within 5 days for scheduling. The panelist will then be responsible for scheduling the settlement conference and obtaining settlement briefs from the parties.

Parties are to Contact the Sonoma County Bar Association for referral to a settlement conference panelist. Please contact Win Rogers by sending an email to <u>Win@SonomaCountyBar.org</u>. Alternatively, you may call Ann at the SCBA front desk at (707) 542-1190 ext. 100, and she will forward your information to Win.

### Trial:

<u>Date</u>: August 27, 2021
<u>Time</u>: 8:30 a.m.
<u>Courtroom</u>: 16
<u>Location</u>: Empire Annex, 3035 Cleveland Avenue, Suite 200, Santa Rosa, CA 95403

1. Please see the attached Trial Orders of the Court

Date: 3/10/2021

Arlene Junior
Clerk of the Court

By: *Cynthia Gaddie*

Cynthia Gaddie, Deputy Clerk

\* ATTACHMENT – AS INDICATED:
- Proof of Service
- Trial Orders of the Court

## PROOF OF SERVICE BY MAIL

I certify that I am an employee of the Superior Court of California, County of Sonoma, and that my business address is 600 Administration Drive, Room 107-J, Santa Rosa, California, 95403; that I am not a party to this case; that I am over the age of 18 years; that I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the United States Postal Service; and that on the date shown below I placed a true copy of the Notice of Mandatory Settlement Conference and Trial and noted attachments in an envelope, sealed and addressed as shown below, for collection and mailing at Santa Rosa, California, first class, postage fully prepaid, following ordinary business practices.

Date: 3/10/2021

Arlene Junior
Clerk of the Court

By: *Cynthia Gaddie*

Cynthia Gaddie, Deputy Clerk

### -ADDRESSEES-

Dave Stanley
815 Butler Ave
Santa Rosa CA 95407

Lisa J Stanley
4949 Snyder Lane #144
Rohnert Park CA 94928

Seth Michael Harris
McCarthy & Holthus LLP
2763 Camino Del Rio South Ste 100
San Diego CA 92108

Case Name:     **Bayview Loan Servicing, LLC v. Stanley**

Case Number:   **SCV-266245**

Party Filing:  _____

## SONOMA COUNTY SUPERIOR COURT
## COURTROOM 16
3035 Cleveland Avenue
Santa Rosa, CA 95403
(707) 521-6729

**(Effective January 1, 2021)**

Judge Patrick M. Broderick
Judicial Assistant, Cindy Gaddie (707) 521-6729
Courtroom Clerk, Lauren Plazola
Court Reporter, Teri Hosmer (707) 521-6539

# TRIAL ORDERS OF THE COURT

The court admonishes the parties and the attorneys that strict compliance with the Sonoma County Local Rules of Court and the California Rules of Court will be required.

## A.    TIME FOR FILING TRIAL DOCUMENTS

1. All attorneys of record and any unrepresented parties must meet and confer, at least seven court days before the Friday on which the case is set for trial, concerning each of the topics discussed in the next paragraph and those discussed in section "I" below.

The Court requires the following documents to be electronically filed ("eFiled") pursuant to Local Rule 18.22: proposed jury voir dire by the court, any proposed jury questionnaires, joint list of trial witnesses, joint estimate of trial time, joint neutral statement of the case, all motions in limine, and any written opposition to a motion in limine [see also section D below re motions in limine], identification of any deposition testimony involving an unavailable witness, each party's list of proposed CACI Jury Instructions, content and number, proposed special jury instructions, and proposed verdict forms. A courtesy copy must be delivered to the drop box for the assigned department.

    Initial Filings - on the sixth court day preceding trial, by 3:30 p.m.   _8-19- 2021_

    Reply Filings - on the third court day preceding trial, by 3:30 p.m.   _8-24- 2021_

2. Signed copies of these Trial Orders shall also be eFiled on the sixth court day preceding the Friday trial date, with a courtesy copy to the drop box for the assigned department.

3. The first day of trial is the Friday date as shown on the Notice of Settlement Conference and Trial.

4. Any trial brief shall be eFiled no later than 3:30 p.m. six court days preceding the Friday trial date, with a courtesy copy to the drop box for the assigned department.

5. All parties or their attorneys shall jointly submit to the judicial assistant or the courtroom clerk of the trial judge one original trial binder before 3:30 p.m. on the sixth court day immediately preceding the date first set for trial. The trial binder shall contain all operative pleadings, all motions in limine, a statement of the case, a joint witness list, trial briefs, special voir dire questions, all CACI and special jury instructions requested, all proposed verdict forms, and the signed Trial Orders of the Court. The binder shall have a table of contents and corresponding tabs.

## B.   GENERAL MATTERS

1. Pursuant to Local Rule 18.22, all documents presented for filing shall be eFiled.

2. Courtroom 16 conducts other court or chamber matters on Mondays. Both bench and jury trials will normally be in session Tuesday through Friday. The trial sessions typically commence at 8:30 a.m. and continue until 1:30 p.m., with 2 scheduled 20 minute breaks. Importantly, the parties must tell the court about any commitments which may require a modification of this schedule.

3. If an attorney or self-represented litigant is unexpectedly prevented from appearing on time at any scheduled court session, he or she should call Judge Broderick's judicial assistant at (707) 521-6729.

4. The court should be informed in advance of any unusual legal issues or evidentiary issues and/or problems that are anticipated during the trial that are not addressed by a motion in limine.

5. The parties shall meet and confer regarding all possible factual stipulations on uncontroverted matters and reduce such stipulations to writing so that they can be read into the record. Further, parties should inform the court of any documents as to which authentication is not disputed and will be waived.

6. Faxing or emailing to court chambers or the court's judicial assistant is **NOT** permitted without prior approval from the court. If an approval is granted, it shall apply for one-use only. Documents which are permitted to be faxed will be deemed courtesy copies only and will not be filed unless there is a stipulation by all parties, found to be acceptable by the court.

7. The parties should discuss and inform the court if they are willing to agree to the stipulations attached to this order, including but not limited to the following:

      a. Waiving the statutory language of the admonition to the jury at separation. (Penal Code section 1122; Code of Civil Procedure section 611)

      b. Waiving the judge's pronouncement of the presence of the attorneys, the parties, and the jurors at the commencement of each court session.

8. In all legal memoranda, only official citations need be used.

9. COURTESY TOWARDS EVERYONE IN THE COURTROOM IS REQUIRED WITHOUT EXCEPTION. Counsel is expected to familiarize themselves with the Guidelines of Civility and Professionalism promulgated by the California Bar Association and is expected to conduct themselves in accordance with the Guidelines.

## C.   EXHIBITS

1. All trial exhibits shall be exchanged between the parties before the trial call of the case, except for impeachment documents. The parties shall meet and confer, at least 48 hours before the trial date in order to determine whether any objection will be made to each exhibit, except those to be used solely for the purpose of impeachment. Also, the parties shall ascertain which of the exhibits may be admitted into evidence by stipulation. No later than the day that motions in limine are heard all exhibits that are designed to be used in the opening statements shall be exchanged among all parties. Disputes will be resolved by the judge at that time.

2. All of the documents submitted to the court as trial exhibits shall consist of one original and one copy for use by the court. The copies shall be stamped in red as a "copy." All exhibits shall be submitted by placing them in the drop box for the assigned department.

3. When presenting an exhibit to be marked for identification, please give the courtroom clerk a description of the exhibit and then allow enough time for it to be marked and for the courtroom clerk to announce the marking for the record.

4. Unless otherwise ordered by the court, any party seeking to offer into evidence a sound or a sound and video recording of a deposition or other prior testimony must comply with California Rules of Court, rule 2.1040, and if offering a videotaped deposition, also with Code of Civil Procedure section 2025.340(m). The original of all deposition transcripts must be lodged with the courtroom clerk when the deposition is to be used in court.

## D.   MOTIONS IN LIMINE

All motions in limine shall be prepared and filed as follows:

1. Format: The title of each motion shall identify the moving party and describe the nature of the motion, and shall be numbered sequentially, indicating the total number of motions submitted by the moving party. For example: "Plaintiff Jane Doe's Motion in Limine to Exclude the Testimony of Joe Expert [#1 of 6]." Written opposition, if any, shall identify both the party filing the opposition and the specific motion that is being opposed by the name of the moving party with the motion number. For example: "Defendant Richard Roe's Opposition to Plaintiff Jane Doe's Motion in Limine [#1 of 6]."

2. Scope: For motions in limine other than those expressly authorized by the Evidence Code, counsel is directed to *Campain v. Safeway Stores, Inc.* (1972) 29 Cal.App.3d 362; *Kelly v. New West Fed. Sav.* (1996) 49 Cal.App.4th 659; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582; and *Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268 with regard to the proper scope of motions in limine. Generally, motions for judgment on the pleadings, leave to amend, motions for summary adjudication and/or summary judgment, or bifurcation are not in limine motions and should not be filed as such.

3. The following motions shall be deemed filed, served and granted unless good cause is otherwise shown by counsel's declaration and request for hearing: (1) all non-party witnesses are excluded from the courtroom until called to testify; (2) all references to settlement negotiations, mediation, and materials related thereto that are privileged under the California Evidence Code are excluded; (3) all references to insurance, or the fact that an attorney is employed by, or has been compensated by, an insurance company are excluded; (4) all references to and evidence of other claims or actions against any party to the litigation are excluded; and, (5) all references to the financial position of any party are excluded.

## E.    DEPOSITIONS AND DISCOVERY

If portions of deposition testimony, requests for admissions, interrogatory responses, or any other discovery responses are to be used in lieu of live testimony at trial, the excerpts to be used shall be clearly identified for all parties. The parties shall then meet and confer to attempt to resolve any evidentiary objections before these discovery responses are read into evidence at trial.

## F.    WITNESSES AND SCHEDULING

1. If trial is to be by jury, the parties shall provide the courtroom clerk and the court reporter with copies of the joint witness list. Please advise the court reporter of any unusual spellings of names, places, or technical terms.

2. THE PARTIES ARE HEREBY ADVISED THAT THE COURT INTENDS TO UTILIZE ALL AVAILABLE TRIAL TIME. PARTIES SHALL MAKE CERTAIN THERE ARE NO GAPS IN THE PRESENTATION OF EVIDENCE. IN THE EVENT THAT A PARTY IS NOT PREPARED TO PROCEED DURING TRIAL, THE COURT MAY DEEM THAT PARTY HAS RESTED, ABSENT A SHOWING OF GOOD CAUSE.

## G.    JURY SELECTION

1. In civil cases, the parties requesting a jury shall have on deposit the first day's jury fees with the clerk in accordance with Code of Civil Procedure section 631. The parties shall make arrangements with the courtroom clerk immediately preceding trial for the daily deposit of fees for both the jury and the court reporter.

2. Based on the Judicial Council standards for jury voir dire, the judge will begin the questioning of prospective jurors. The parties shall submit in writing any specific questions, or areas of inquiry, not contained in the Judicial Council standards on which they would like the court to inquire.

After the court's inquiry, the parties will have an opportunity to voir dire prospective jurors, subject to the following:

    a. The voir dire by the parties will be subject to reasonable time limits set by the court;

    b. The parties may not repeat or rephrase questions which the court has already asked;

    c. Pre-instructions, pre-argument, and suggestive questions will not be permitted, unless the court determines otherwise upon request;

d. All challenges for cause will be expressed at the side bar or otherwise outside the presence of the jury panel;

e. All general questions should be asked to the panel at large, rather than repeating such questions to each juror; and

f. The court <u>exclusively</u> inquires regarding hardships and schedules.

3. The appropriate number of peremptory challenges per side will be discussed and ruled upon prior to trial.

4. The court generally prefers that two alternate jurors are selected. In the longer cases the court will consider selecting a greater number of alternates. If it becomes necessary to substitute an alternate juror, the alternate will be chosen by lot unless counsel stipulate to number the alternates and substitute them in order. (Code of Civil Procedure section 234; *People v. Armendariz* (1984) 37 Cal.3d 573, 581 n7.)

## H.     <u>CONDUCT OF TRIAL</u>

1. The FIRST day of trial is the Friday shown on the Notice of Settlement Conference and Trial.

2. The court is available for settlement discussions prior to trial or at any time during trial. If the parties wish to pursue settlement further with another judge, the proceedings may be suspended, as determined by the court, so that such discussions can proceed forthwith.

3. No demonstrative exhibits, charts, diagrams or enlargements shall be placed within sight of the jury unless previously shown to the opposing party, marked for identification, and approved by the court.

4. Arguments on points of law or evidentiary matters shall be made out of the presence of the jury. When objections or responses to objections are made, only the legal basis of the objection or exception may be stated in open court in the presence of the jury.

5. Conferences at the bench or sidebar will normally be off the record. If any party wants to place a matter discussed at sidebar on the record, he or she may so request and those proceedings will be conducted on the record, either immediately or at the next available opportunity.

6. As noted above, the parties have full responsibility to arrange for the appearance of witnesses so as to eliminate any trial delays. The court asks that the parties confer every day throughout trial about the upcoming witnesses to avoid delays. The court should be informed about witnesses to be called out of order.

7. Transcripts of testimony may be ordered from the court reporter. The fees for such transcripts are generally deposited in advance upon an estimate by the reporter. All transcripts prepared by the court reporter for either side will be available to the opposing side and to the public

8. The parties should never, in the presence of the jury, ask the court reporter to mark or to flag a witness's answer to a particular question. Instead, the party should note the time and subject matter of the testimony and then inform the court reporter unobtrusively at the next court recess.

This is intended to prevent the use of "marking" as a device for attracting the jury's attention to certain testimony.

## I.    JURY INSTRUCTIONS

1. The court pre-instructs the jury as to preliminary matters immediately before opening statements, and finally instructs immediately before closing arguments, unless the parties agree on another procedure. Written instructions are provided to the jurors when they retire for deliberation.

2. In all jury cases, each party shall submit all jury instructions disclosed by the pleadings six court days prior to the first day of trial. It should be remembered that an early filing of a list of CACI instructions is required under section "A" above.

3. Before conclusion of the trial, the parties must jointly review the proposed jury instructions to preclude submission of duplicate instructions to the court and to advise the court of agreement or disagreements about particular submitted instructions.

4. If the parties wish to submit instructions which are not found in CACI, they should provide such instructions on plain paper, without displaying either a party or firm name. Any special instructions should be submitted in digital form on a CD as a Word document, along with the hard copy.

5. Parties requesting use of special verdicts or answers to special interrogatories must furnish to the court and to the other side the proposed forms of verdict or the interrogatories.

## J.    JURY DELIBERATIONS

Counsel and parties are not required to remain in the courtroom during jury deliberations; however, it is the parties' responsibility to keep the courtroom clerk and bailiff fully informed as to where they can be located at all times, including during the noon hour. The parties and the lawyers will be expected to return to the courtroom within 20 minutes after being notified to do so. Cell phone contact numbers, if available, are to be provided to the courtroom clerk. The numbers will not be disclosed.

## K.    AFTER TRIAL

1. If a special verdict is rendered by the jury, the prevailing party shall prepare the proposed judgment, unless the court instructs to the contrary. The proposed judgment shall be submitted on the next court day after the trial has been concluded.

2. Counsel should make arrangements with the courtroom clerk to withdraw exhibits.

3. The parties and the lawyers are free to discuss the case with jurors after the trial, with each juror's permission; however, no one may berate a juror for his or her verdict, or reveal evidence which was not admitted at the trial. When communicating with jurors after they have returned a verdict, under no circumstances are litigants or counsel permitted to criticize the jurors or their verdict.

4. "Thank you" letters to the trial jurors are not favored. The lawyers can thank the jurors during the closing argument, or while they are still assembled. The court sends a "thank you" letter expressing the gratitude of all parties for the jurors' service.

5. In accordance with Local Rule 4.17, at the time of filing, post-trial documents including, but not limited to, post-trial motions, opposition and replies, the parties shall deliver courtesy copies of the filed documents directly to the trial department's drop box.

I have reviewed and understand the foregoing orders.

| | |
|---|---|
| _____ | _____ |
| Date | Counsel for Plaintiff |
| _____ | _____ |
| Date | Counsel for Plaintiff |
| _____ | _____ |
| Date | Counsel for Defendant |
| _____ | _____ |
| Date | Counsel for Defendant |
| _____ | _____ |
| Date | Counsel for Cross-Complainant |
| _____ | _____ |
| Date | Counsel for Cross-Defendant |

# PROCEDURAL STIPULATIONS

Case No.: _____     Case Name: _____

**It is hereby stipulated by the respective parties in the above entitled action:**

**Please Initial**

|  | Counsel for Plaintiff | Counsel for Defendant |
|---|---|---|

1. That, unless called to the court's attention, all of the jurors shall be deemed to be in the jury box and in their designated seats upon the reconvening of court following each recess or adjournment.

2. That after giving the admonition required by Code of Civil Procedure section 611, the judge needs not repeat the admonition at each subsequent recess or adjournment.

3. That the parties and the lawyers need not be present when, during jury deliberations, jurors go to lunch, return from lunch, are discharged in the evening, and resume work in the morning.

4. That the approved jury instructions and admitted trial exhibits may go into the jury room during deliberations.

5. That during jury deliberations the jury may recess without any further admonition and without going back into the jury box and that they may resume deliberations upon the bailiff's determination that all jurors are present.

6. That in the absence of the trial judge, the verdict may be received by any judge of this court.

7. That upon order of the court all of the trial exhibits will be returned to the attorneys after the trial is over for safekeeping until the time for appeal has expired.

8. That at the conclusion of the trial all questionnaires shall be immediately destroyed.

_____     _____
Counsel for Plaintiff                              Counsel for Defendant

Date: _____     Date: _____

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>**CIVIL DIVISION**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>www.sonoma.courts.ca.gov<br><br>Bayview Loan Servicing, LLC vs Stanley | (FOR COURT USE ONLY)<br>**ENDORSED**<br>**FILED**<br><br>APR 1 5 2020<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,**<br>**NOTICE OF CASE MANAGEMENT CONFERENCE,**<br>**and ORDER TO SHOW CAUSE** | Case number:<br><br>SCV-266245 |

**A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT**
**AND WITH ANY CROSS-COMPLAINT**

1. **THIS ACTION IS ASSIGNED TO HON. Patrick Broderick FOR ALL PURPOSES.**
Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.
2. EACH DEFENDANT MUST FILE A WRITTEN RESPONSE TO THE COMPLAINT AS REQUIRED BY THE SUMMONS.

A Case Management Conference has been set at the time and place indicated below:

| |
|---|
| Date: 09/15/2020          Time: 3:00 PM          Courtroom 16<br>Location: Empire College Court Annex<br>3035 Cleveland Avenue<br>Santa Rosa, CA 95403 |

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.
4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.
5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://sonoma.courts.ca.gov/online-services/tentative-rulings.

**ORDER TO SHOW CAUSE**

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with the requirements stated in the California Rules of Court, rules 2.30, 3.110, and/or 3.720 through 3.771 inclusive, you must then and there show cause why this court should not impose monetary and/or terminating sanctions in this matter.

Pursuant to California Rule of Court, rule 3.221(b), information and forms related to Alternative Dispute Resolution are available on the Court's website at http://sonoma.courts.ca.gov/self-help/adr.

## ELECTRONIC SERVICE OF DOCUMENTS

### Enabled by Local Rule 18.16

Voluntary e-service is available in Sonoma County. The Court has pre-approved a Stipulation for cases in which the attorneys or parties choose e-service. A copy of the Stipulation is available under the "Civil" section in the "Division" tab of the Court website: http://www.sonoma.courts.ca.gov. The advantages of e-service to the parties include:

| | |
|---|---|
| **SAVE MONEY** | Reduction in costs related to photocopying, retrieving, storing, messenger and postage fees. No special software is needed to use e-service |
| **SAVE TIME** | Instant service of your documents on all parties |
| **SAVE SPACE** | With 24/7 internet access to all documents, you do not need to house paper copies |
| **GAIN CERTAINTY** | Immediate confirmation of service for your records. Documents are not delayed in the mail or blocked by email spam blockers and firewalls |

To take advantage of e-service, select an e-service provider and file the signed Stipulation with the Court. Parties can then e-serve documents through the selected provider. Information about e-service providers is available at the website for the Sonoma County Bar Association: http://www.sonomacountybar.org. The Court does not endorse one provider over another.

**To learn more about available e-service providers and their fees, please visit their website**

*Note: Hard-copy pleadings are required to be filed with the Court in accordance with applicable provisions of the Code of Civil Procedure, California Rules of Court and local rules. You do not need to provide a courtesy copy of a served document to the specific department in which the matter has been assigned.*

## DISCOVERY FACILITATOR PROGRAM

Effective January 1, 2008, the Sonoma County Superior Court promulgated Sonoma County Local Rule 4.14 which established the Discovery Facilitator Program. Participation in the Discovery Facilitator Program shall be deemed to satisfy a party's obligation to meet and confer under Sonoma County Local Rule 5.5 and applicable provisions of the Code of Civil Procedure and California Rules of Court. This program has been providing assistance in resolving discovery disputes and reducing the backlog of matters on the law and motion calendars in our civil law departments. The Sonoma County Superior Court encourages all attorneys and parties to utilize the Discovery Facilitator Program in order to help resolve or reduce the issues in dispute whether or not a discovery motion is filed.

There is a link to Local Rule 4.14 and the list of discovery facilitator volunteers on the official website of the Sonoma County Superior Court at http://www.sonoma.courts.ca.gov. On the home page, under the "AVAILABLE PROGRAMS & HELP" section, click on »Discovery Facilitator Program. You can then click on either "Local Rule 4.14" to obtain the language of the local rule, or "List of Facilitators" for a list of the volunteer discovery facilitators and accompanying contact and biographical information.

### Pursuant to Local Rule 5.1.C:

The moving party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of any motion filed. The responding party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of all opposition papers. Finally, the moving party shall, on the date of filing, hand-deliver to the Assigned Judge a courtesy copy, which need not be file-endorsed, of all reply papers.

**Pursuant to Local Rule 5.1.C.1:**

If any matter scheduled on the law and motion calendar is resolved, dismissed, settled or becomes moot for any reason, the moving party shall immediately notify the judicial assistant for the Assigned Judge if the motion is to be dropped from the law and motion calendar. Said notification may be made by telephone, followed by a letter of confirmation.

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
McCarthy & Holthus, LLP
Seth Harris, Esq. (SBN: 253802)
411 Ivy Street
San Diego, CA 92101
TELEPHONE NO. 619-685-4800     FAX NO. 619-685-4811
ATTORNEY FOR *(Name):* Plaintiff, Bayview Loan Servicing, LLC

To keep other people from seeing what you entered on your form, please press the Clear This Form button at the end of the form when finished.

**ELECTRONICALLY FILED**
Superior Court of California
County of Sonoma
**4/15/2020 8:00 AM**
Arlene D. Junior, Clerk of the Court
By: Alexandria Hankes, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SONOMA
STREET ADDRESS: 600 Administration Drive
MAILING ADDRESS: 600 Administration Drive
CITY AND ZIP CODE: Santa, Rosa, CA 95403
BRANCH NAME: Hall of Justice

CASE NAME:
Bayview Loan Servicing, LLC v. Dave Stanley, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited | ☐ Counter   ☐ Joinder | SCV-266245 |
| (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* Three (3)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 3/26/2020
Seth Harris, Esq.
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
  domain, landlord/tenant, or
  foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear This Form
button after you have printed the form.

[ Save This Form ]  [ Print This Form ]  [ Clear This Form ]